NORTHAM v. INTERNATIONAL INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. INSURANCE—ACTION ON POLICY—FORFEITURE—ESTOPPEL.
   Where a general agent of an insurance company, authorized to receive premiums, and to consent to a transfer of policies, accepts a balance of a premium from an assignee of the insured, with full knowledge of the assignment, and consents, in consideration of the payment of a balance of the premium, to continue the policy for the benefit of such assignee, the company is estopped, in an action by the assignee on the policy, from insisting on a forfeiture because of the absence of an indorsement of the assignment on the policy in compliance with a stipulation therein.

2. SAME—PARTIES.
   One holding a lease as collateral security for a debt is not a necessary party to an action on a policy of insurance on property covered by the lease.

3. SAME—EVIDENCE.
   In an action for insurance it is not prejudicial error to sustain an objection to an inquiry of the agent as to whether he paid the premium to the company, and reported it in a certain report, where he previously testified to reporting the premium.

4. SAME—QUESTION OF FACT—DETERMINATION BY COURT.
   Where, at the close of the whole evidence, counsel for plaintiff and defendant each requests a verdict in his favor, the court is warranted in passing on any questions of fact presented by the evidence.

Appeal from trial term, Jefferson county.

Action by Lewis N. Northam, as assignee of Wallace G. Northam, against the International Insurance Company of New York, to recover on a policy of insurance. Verdict for $2,047.33 directed for the plaintiff. At the same term a motion was made for a new trial on the minutes, and denied. Appeal by the defendant from the judg-

ment entered upon the verdict and from the order denying the mo-
tion for a new trial.    Affirmed.

Action to recover on an insurance policy issued by the defendant against
loss or damage to property situated on Stony Island, both real and personal.
The policy was issued to Wallace G. Northam by one George N. Brown, agent
for the defendant.  At the time it was issued only a part of the premium, to
wit, $25, was paid by the insured to the agent, leaving unpaid $15, the balance
of the premium.  On the 17th of August, 1898, the insured executed a general
assignment for the benefit of his creditors to the plaintiff.  On the night of the
3d of September a fire took place, which consumed the property insured.  It
was conceded at the trial that, if the plaintiff was entitled to recover, the
damages were equivalent to the full face of the policy.  On the 7th of Sep-
tember, schedules under the assignment, and a bond required by the assignee,
were prepared.  Proofs of loss were prepared by the plaintiff in due time, and
no question is raised in respect to them.  At the close of the evidence the
defendant asked the court to dismiss the plaintiff's complaint, and the request
was denied and the defendant took an exception.  The plaintiff requested the
court to direct a verdict for the plaintiff, and such a direction was given, and
the defendant took an exception.

Argued before HARDIN, P. J., and ADAMS, McLENNAN,
SPRING, and SMITH, JJ.

Horace McGuire, for appellant.
Breen & Breen and A. H. Sawyer, for respondent.

HARDIN, P. J.  On the 28th day of April, 1898, defendant issued
its certificate to George N. Brown, whereby it constituted him an
agent of the defendant for the purpose of receiving proposals and
making insurance in its behalf, and therein authorized him to "fix
the rates of premium upon any such insurance, to receive moneys,
and to countersign and issue, renew, and consent to the transfer of,
policies of insurance."  On the 26th of July, 1898, the agent of the
defendant agreed upon terms of insurance of a building situated on
Stony Island, in the town of Hounsfield, and upon insurance of cer-
tain personal property contained in said building, and stipulated
that the premium for such insurance should be $40 for one year,
and issued for the defendant a standard policy, wherein the defend-
ant agreed to indemnify the insured against all loss or damage sus-
tained by fire during the existence of such policy upon the payment
of a premium of $40.  No controversy was made at the trial in re-
spect to the amount of damages the plaintiff was entitled to recover.
At the time of the delivery of the policy to the insured there was
paid to the agent the sum of $25, leaving in arrear on the premium
$15.  It is alleged in the plaintiff's complaint that on the 17th day of
August, 1898, the insured made a general assignment for the benefit
of his creditors to the plaintiff, and that the defendant had due no-
tice thereof, and consented thereto, and continued its policy in full
force and effect for the benefit of the plaintiff as such assignee.  It
is further alleged that on the 4th of September, 1898, while the policy
was in force, the property covered by the insurance policy was de-
stroyed.  At the time of the fire the plaintiff was engaged in making
an inventory of the assigned property and preparing to give the bond
required by law of an assignee, which inventory and bond were sub-
sequently made and given.  It is alleged in the complaint that the

plaintiff notified the defendant's agent of the assignment, and at the time of such notification paid the balance of the premium, and was assured by the agent that the policy was all right, and that the defendant waived the conditions in the policy in respect to the contemplated change of title and interest in the property. In the answer the defendant admits:

"That all of the property described in the plaintiff's complaint, and which was destroyed by fire, passed to the plaintiff herein, as such assignee for the benefit of creditors by virtue of the said general assignment for the benefit of creditors."

It admits that proofs of loss under the policy were served on it on or about the 13th day of October, 1898.

The policy contained the following language:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if any change other than by the death of the insured take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise, or if this policy be assigned before a loss."

It also contained the following language:

"This policy is made and accepted subject to the foregoing stipulations and conditions and such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It is contended in behalf of the appellant that the agent had no power or authority to waive the conditions of the policy unless the waiver was in writing, and indorsed upon the policy. From the testimony it appears that the premium for the insurance was $40, and that only $25 was paid at the time the policy was delivered, and the agent gave a credit for the remaining $15. That was the condition in respect to the premium at the time the assignment was made by the insured to the plaintiff on the 17th of August. Shortly after the assignment was prepared, the insured, at the instance of the plaintiff, called upon Brown, the defendant's agent, and held a conversation with him, in which conversation Brown was informed that the assignee was desirous of paying the remaining portion of the premium and of continuing the policy for the benefit of the assignee. Thereupon Brown, the agent for the defendant, called upon the plaintiff, and presented his bill for the $15 balance of the premium due upon the policy, and the agent informed the plaintiff that he had already had an interview with the insured, and from him received information of the assignment, and that the assignee would call upon him in respect to the payment of the balance of the premium. The plaintiff then informed the agent, Brown, that he wanted to have the insurance kept in full force, and in response thereto Brown replied that, if the plaintiff would pay the balance of the premium, it

would be all right; and the plaintiff assured the agent that he would attend to it at once. The plaintiff at that time did not have the policies of insurance in his possession, they being kept in a safe; and were not in fact obtained by the plaintiff until after the fire. At the time the information was communicated to the agent, he said that, if the balance was paid, it would be all right, and the policy would continue. Thereafter the plaintiff furnished the $15, and sent it to the agent on or about August 26th, and the agent then again stated that the policy would be all right, and received the $15, having made a bill therefor, and executed a receipt in the following words:

Watertown, N. Y., Aug. 26th, 1898.
Mr. L. M. Northam, Assignee of W. G. Northam,
To Geo. N. Brown, Dr.   No. 9 Flower Bldg.
Fire, Life, and Accidental Insurance.   Money to Loan on Real Estate.
Terms Cash.
To Bal. Fire Ins. Prem.   Stony Island............................. $15 00
Paid.
Geo. N. Brown, Agt.

The circumstances disclosed in the evidence under which the premium was paid indicate an intention on the part of the agent to reissue or continue the insurance in life in favor of the assignee, and we think they are such as to indicate an intentional waiver by the defendant of the clause contained in the policy against alienation of the insured property, and that the defendant is equitably estopped from interposing the condition of the policy. Brown was a general agent of the company, furnished with blank policies of insurance signed by the officers of the company, and he was authorized to fix rates of premium, and to countersign, issue, renew, and consent to the transfer of, the policies of insurance; and at the time he received the money, on the 26th of August, and delivered the receipt, he had full information of the assignment to the plaintiff, who had received such assignment for the benefit of the creditors of the insured; and he was also informed that the property had not yet passed from the possession of the insured; and the essence of the transaction between the agent in behalf of the company and the plaintiff was that for and in consideration of the payment of the $15 remaining in abeyance of the premium the company would continue the policy from that date, to wit, the 26th of August, 1898, to the 26th day of July, 1899. The acceptance by the agent of the $15, and the assurance given by him that the policy was all right, and that the insurance would be continued, very naturally led the plaintiff to omit to obtain other insurance, and to rely upon the assurances of the agent that the policy in question was renewed or reissued for the benefit of the plaintiff; and the defendant thereby became estopped from insisting upon a forfeiture of the policy by reason of the absence of a formal indorsement upon the policy. The agent in this case was informed that the policy was not then in the possession of the plaintiff, and could not readily be procured, and assured the plaintiff that, if the premium was paid, that was all that was necessary to carry the policy to the 26th of July, 1899. The plaintiff relied upon that assurance, otherwise he would not have

paid the $15 balance of the premium necessary to continue the policy to its end. We think the case falls within the doctrine laid down in Manchester v. Assurance Co., 151 N. Y. 88, 45 N. E. 381. In the course of the opinion delivered in that case by Martin, J., he said, in respect to a somewhat similar assurance given by an agent, viz.:

"It would be the natural result of the defendant's act, and, consequently, the case falls within the principle upon which the doctrine of equitable estoppel is founded, and the defendant should be precluded from claiming a forfeiture of the policy on the ground of the absence of such an .indorsement or from insisting that there was a want of consideration."

In the Manchester Case it was alleged in the complaint that the defendant, by its agent, promised and agreed to keep the insurance in force for the benefit of the plaintiff, as owner of the insured property, and the complaint set out the issuance of the policy, and supplemental arrangement made in respect thereto by the agent; and the court of appeals allowed a recovery to be had, although there had been no formal indorsement upon the policy.

2. There is no evidence in the case to the effect that Benoit and others, the lessors of Wallace G. Northam, had any interest in the policy of insurance issued by the defendant, or in the right of recovery in this action.

3. The assignment of the lease to the Carthage National Bank was not an absolute assignment. It was only a pledge as collateral security for the payment of a debt, and therefore the Carthage National Bank was not a necessary party to an action brought to enforce the policy of insurance upon the property covered by the lease or contract. In Griffey v. Insurance Co., 30 Hun, 299, it appeared the policy contained a provision that, "if this policy shall be assigned before a loss, without the consent of the company indorsed thereon, * * * the policy shall be void." It also appeared that the plaintiffs had transferred the policy in suit, with others, to the Lewisburgh National Bank, as collateral security for claims held by said bank against the plaintiff; and in the course of the opinion delivered by Smith, P. J., it was said:

"It will be observed that the policy does not prohibit a transfer of the policy, or any interest therein; in other words, the condition is aimed only at a transfer which deprives the assured of all interest in the policy. The assignment in this case merely created a lien for the security of a debt, and the entire interest remained in the assignors, subject to the lien or pledge. We are inclined to think that the prohibition should be construed strictly, and that it does not apply to a mere pledge of the policy,"—citing Lazarus v. Insurance Co., 5 Pick. 80; Ellis v. Kreutzinger, 27 Mo. 311; Insurance Co. v. Kelly, 32 Md. 421; Id., 5 Benn. Fire Ins. Cas. 302; Wood, Ins. § 339.

This case was affirmed in 100 N. Y. 417, 3 N. E. 309, and it was held:

"That the clause simply prohibited an absolute assignment of the whole policy, and that a transfer of it by way of pledge or security for a special and temporary purpose—for instance, a transfer as collateral security for a debt— was not within the prohibition."

The latter case was quoted with approval in McNally v. Insurance Co., 137 N. Y. 398, 33 N. E. 475.

In the case in hand the assignment to the Carthage National Bank of the lease was expressly as a "collateral security for the payment

to the said bank of any and all indebtedness now held or which may hereafter be held by the said bank." We think the evidence fails to show a forfeiture.

4. It was not prejudicial error to sustain the objection to the question put to the witness Brown, "Did you pay the International Insurance Company the full amount of this premium yourself, and report it in your July report?" Prior to the ruling, the witness had testified, viz.: "I reported the premium in full for this policy in my July report." · The plaintiff was not concerned in the relations existing between the agent and the defendant in respect to the payment of premium, and it was not important to show whether the agent had transmitted the whole premium, or any part of it, to the defendant, as the plaintiff had nothing to do with it whatever. Van Wert v. Insurance Co., 90 Hun, 465, 36 N. Y. Supp. 54.

At the close of the whole evidence the defendant's counsel asked for the direction of a verdict for the defendant, and the plaintiff's counsel asked for the direction of a verdict in favor of the plaintiff. Under such circumstances the court was warranted in passing upon any questions of fact which were presented by the evidence, and it must be assumed that the facts have been found favorable to the plaintiff. There was very little conflict in the evidence, and we think it sustains the verdict of the jury, and that the defendant's motion for a dismissal of the plaintiff's complaint was properly denied, and the motion for a new trial on the minutes was properly denied.

Judgment and order affirmed, with costs. All concur.